Wayne ROSS and Nancy
Ross, Petitioners,

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Wayne Ross and Nancy
Ross, Petitioners,

v.

Department of Public Welfare,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2002.
Decided Nov. 7, 2002.
Reargument Denied Jan. 3, 2003.

Lawrence A. Durkin, Scranton, for petitioners.

Howard C. Ulan, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Wayne Ross and Nancy Ross (Petitioners) petition this court for review of two orders of the Department of Public Welfare (Department). The first order, dated October 19, 2001, denied Petitioners' request for interest on retroactive adoption assistance payments. The second order, dated November 20, 2001, denied Petitioners' request for reconsideration of the October 19, 2001 order.[1] We affirm.

---

1. Adoption assistance is a federal program [Title IV–E of the federal Social Security Act at Section 473(a) and (c) of the Social Security Act, 45 U.S.C. § 1356.40(b)(1), codified at 45 C.F.R. § 1356.40(b)(1)], available to states, and which, in Pennsylvania, is managed and partially funded by the individual county Children and Youth Services agencies,

In January of 1984, four sisters were taken into custody by Susquehanna County Children and Youth Services (SCYS). Two of the girls, Angela and Christine were placed with the Goodwin family and later adopted. The other two girls, Jennifer and Melinda, were placed in county foster care for two and a half years until they were placed with Petitioners on July 18, 1987, in preparation for adoption.

SCYS was aware that Jennifer Ross had developmental and orthopedic problems before she was placed with Petitioners. She was a failure to thrive baby, had rickets, malnutrition and had been hospitalized for this condition. Melinda Ross has a bed-wetting problem. SCYS was also aware of a history of mental illness in the biological family and that the biological father was an alcoholic and physically abusive. SCYS did not inform Petitioners of the availability of adoption assistance for the children. Petitioners adopted the girls on April 19, 1988.

In 1997, Petitioners learned of the availability of adoption assistance. Petitioners requested and were denied adoption assistance from SCYS. Petitioners appealed this decision to the Department's Bureau of Hearings and Appeals (Bureau). A hearing was held on March 1, 2000, at which both parties stipulated that Petitioners were entitled to benefits under an adoption assistance agreement for both girls. The Bureau sustained the Petitioners' appeal and ordered SCYS to:

> [P]ay the maximum applicable amount, which is a sum certain that only the County has sufficient data to determine. After the County issues a notice to the Appellants, the Appellants, if they disagree with the amount in the notice or the calculations, may appeal that action of the County and request another hearing.

Bureau Opinion, August 28, 2000, at 13. On September 14, 2000, the Department affirmed the August 28, 2000 order informing the parties that they had 15 days in which to request reconsideration and 30 days in which to appeal. Neither party requested reconsideration or appealed the decision.

On November 8, 2000, SCYS sent a proposed adoption assistance agreement and a calculation of the adoption subsidy to Petitioners. On December 7, 2000, they again wrote to Petitioners referring to a communication of December 5, 2000 and stated that SCYS would not be willing to consider a request for interest. On December 12, 2000, SCYS issued the first of two checks totaling $120,985.74 to Petitioners for retroactive adoption assistance payments. On February 7, 2001, Petitioners requested a hearing on the issue of whether SCYS should pay interest on the retroactive adoption assistance. The second check was issued to Petitioners on March 26, 2001.

■ The Bureau treated Petitioners' request as a petition to enforce the original order dated September 14, 2000. On September 28, 2001, the Bureau denied Petitioners' request for interest. On October 19, 2001, the Department affirmed the Bureau's decision. Petitioners petitioned this Court for review on November 16, 2001 and December 18, 2001.[2] We consolidated the petitions for this review.

---

as provided by the regulations adopted at 55 Pa.Code § 3140.201–210, and supervised by the Commonwealth's Department of Public Welfare, in order to promote the adoption and care of children with special needs by eligible adoptive parents with financial assistance for that purpose.

2. Our review of an administrative order is limited to determining whether a constitutional violation, an error of law or a violation of

Petitioners contend that their appeal was timely and that SCYS should be ordered to pay Petitioners interest on the retroactive adoption assistance payments.

The plain language of the Bureau's opinion states that Petitioners may appeal if they disagree with SCYS's figures in the proposed agreement for retroactive adoption assistance. Thus, the Bureau was correct in hearing Petitioners' appeal.

However, Petitioners are not eligible for interest on the retroactive adoption assistance payments. In *Adoption, ARC, Inc. v. Department of Public Welfare*, 727 A.2d 1209 (Pa.Cmwlth.1999), our court noted that State regulations provide that the county agency "shall execute a binding written adoption assistance agreement between the agency and the prospective adopting parents at the time of or before the court issues the final adoption decree. 55 Pa.Code § 3140.203(a). If, however, a request for adoption assistance is denied and such an agreement is not signed and in effect at the time of or prior to the finalization of the adoption ..., the adopting parents may request a fair hearing under section 671(a)(12) of the Federal Act, 42 U.S.C., § 671(a)(12), provided there are extenuating circumstances." *Id.* at 1211.

In *Gruzinski v. Department of Public Welfare*, 731 A.2d 246 (Pa.Cmwlth.1999), we found that a family who was never informed of adoption assistance and did otherwise qualify, was eligible for retroactive adoption assistance payments. We stated that the failure of SCYS to provide information on the availability of adoption assistance to the adoptive parents constitutes an "extenuating circumstance" and an exception to the federal regulations at 45 CFR § 1356.40(b)(1). The U.S. De-

partment of Health and Human Services created an exception to the adoption assistance procedures that provides for retroactive payments of the assistance, but there is no provision for interest. Petitioners' remedy is a fair hearing and, if successful, adoption assistance is paid retroactively to the earliest date of the child's eligibility.

We note that *Braig v. Pennsylvania State Employes' Retirement Board*, 682 A.2d 881 (Pa.Cmwlth.1996), does not apply to the present controversy as it concerns common law contract principles. The state's obligation to pay adoption assistance is statutory and regulatory, not contractual. Common law principles that apply to contract disputes are not applicable here. We must look to statutes and regulations as defined by the federal and state welfare program.

In *Northampton Convalescent Center v. Department of Public Welfare*, 550 Pa. 167, 703 A.2d 1034 (1997), our Supreme Court determined that the state Medical Assistance Manual did not provide for interest payments on underpayments of reimbursements for nursing home services as the federal manual did. The Supreme Court found that no interest payments were due because the state appeal process controlled what remedies were available to an appellant during an administrative appeal.

The present controversy is similar to *Northampton Convalescent Center* in that this appeal is governed by the Pennsylvania Administrative Agency Law and Pennsylvania's General Rules of Practice and Procedure. Thus, the appeal process as set forth in the adoption assistance procedures controls whether Petitioners are entitled to interest on the retroactive

the administrative agency procedure has occurred and whether the necessary findings of fact are supported by substantial evidence.

*Northampton Convalescent Center v. Department of Public Welfare*, 550 Pa. 167, 703 A.2d 1034 (1997).

payments in this administrative appeal. Although the Department has provided for interest in other programs it administers, the Department did not create a provision for interest on retroactive adoption assistance. *See Western Reserve Convalescent Home v. Department of Public Welfare,* 541 Pa. 77, 660 A.2d 1312 (1995). The statutory and regulatory laws regarding adoption assistance do not contain any instruction regarding the awarding of interest for retroactive adoption assistance payments. There are no provisions in the exceptions to the adoption assistance procedures that allow for the payment of interest on the retroactive adoption assistance payments. Petitioners are entitled to adoption assistance payments. However, an award of interest would fall outside the remedies available in this administrative appeal.

Accordingly, we affirm.

### ORDER

AND NOW, this 7th day of November, 2002, the order of the Department of Public Welfare in the above captioned matter is affirmed.

DISSENTING OPINION by Judge FRIEDMAN.

Because I believe that the holding in *Braig v. Pennsylvania State Employes' Retirement Board,* 682 A.2d 881 (Pa. Cmwlth.1996), is controlling, I respectfully dissent.

The majority concludes *Braig* is inapplicable to the present controversy, mischaracterizing that case as one that concerns contract disputes. (Majority op. at 5.) However, like the present case, *Braig* involved the question of whether interest was payable, despite the absence of a statutory or contractual obligation, where payments required by statute were withheld.

In *Braig,* the State Employees' Retirement Board (SERB) initially denied the claimants' applications for retirement benefits. SERB eventually issued retroactive payments to the claimants, but denied their request for interest for the period during which the benefits had been withheld. On appeal, the *Braig* court first addressed the threshold issue of whether SERB was under either a statutory or contractual duty to pay interest on the withheld payments and found that, although the underlying benefit payments were statutorily mandated, no duty to pay interest existed by virtue of statute or contract. However, unlike the majority in this case, the court in *Braig* did not end its analysis there, but next examined the question of whether SERB was under an *independent obligation,* by virtue of the common law of this Commonwealth, to pay the claimants interest on their withheld benefits.

Pennsylvania common law recognizes interest as a form of damages allowed, in the absence of an express contract, when payment is withheld after the debtor has a duty to discharge the debt. *Id.* There are two prerequisites to the running of interest under these circumstances: the debt must have been liquidated with some degree of certainty, and the duty to pay it must have become fixed. *Id.* Once these prerequisites are met, failure to discharge the principal of the debt at the time fixed for payment is considered a wrongful withholding of the payment due that warrants an award of interest at the legal rate from the date the money was due and payable. *Id.; Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984). Therefore, we held in *Braig* that a

common law obligation to pay interest did exist, because the retirement benefits were liquidated and SERB was required by statute to grant the claimants retirement benefits.[1]

The present case is factually similar. Wayne Ross and Nancy Ross (Petitioners) adopted two girls on April 19, 1988. Although state regulations required Susquehanna County Children and Youth Services (SCYS) to execute a written adoption assistance agreement at or prior to the finalization of the adoption, SCYS failed to inform Petitioners that adoption assistance was available and did not stipulate that Petitioners were entitled to assistance until the hearing on March 1, 2000. The Department of Public Welfare (Department) concedes that the instant debt was liquidated with some degree of certainty prior to April 19, 1988, (Department's Brief, p. 17), and there is no dispute that the duty of SCYS to pay the debt was fixed by law at that time. 42 U.S.C. § 675(3); 55 Pa.Code § 3140.203.

The material facts of this case are on point with those in *Braig*, and, therefore, the same analysis applies: because SCYS' duty to pay a liquidated debt was fixed, its actions in withholding Petitioners' assistance benefits can be characterized as wrongful,[2] and Pennsylvania common law imposes an obligation on SCYS to award Petitioners interest.[3]

The majority states that the available remedies are limited to those provided by statute or regulation, i.e., a hearing and retroactive assistance payments, but our holding in *Braig* compels a contrary conclusion. Moreover, the authority to issue assistance payments retroactively appears to be contained only in a federal policy interpretation question and a Department policy announcement,[4] not a statute or regulation. *See Gruzinski v. Department of Public Welfare*, 731 A.2d 246 (Pa.Cmwlth.), *appeal denied*, 561 Pa. 661, 747 A.2d 902 (1999). I suggest that the lack of other authority to make retroactive assistance payments is evidence that the absence of a

---

1. Although *Braig* refers to contract principles, the opinion states clearly that the claim for interest is cognizable under common law, which imposes a duty to pay interest based upon a delay in the discharge of a debt. *Braig*, 682 A.2d at 888.

2. A debt may be "wrongfully" withheld despite the fact that withholding is not the result of bad faith or blame worthy conduct. The common law rule requiring a debtor to pay interest on a debt is based on a theory that interest represents compensation for the loss of use of money and is restitutionary rather than punitive in nature. *See Atlin v. Security–Connecticut Life Insurance Co.*, 788 F.2d 139 (3d Cir.1986); *Penneys v. Pennsylvania Railroad Co.*, 408 Pa. 276, 183 A.2d 544 (1962).

3. In contrast, the decision on which the majority relies, *Northampton Convalescent Center v. Department of Public Welfare*, 550 Pa. 167, 703 A.2d 1034 (1997), did not involve a statutory duty to make underlying payments and

the wrongful withholding of such payments, but, ultimately, the application of the state Medical Assistance Manual. Our supreme court previously had applied the state manual to conclude that interest on additional monies paid to a provider as the result of a successful appeal were not allowable costs subject to reimbursement, because they were not necessary and reasonable costs to the proper care of Medical Assistance Program patients. *Western Reserve Convalescent Home v. Department of Public Welfare*, 541 Pa. 77, 660 A.2d 1312 (1995). Relying on *Western Reserve*, the *Northampton* court determined that the state manual, rather than federal regulations, governed the appeal process and the remedies available on appeal.

4. U.S. Department of Health and Human Services Policy Interpretation Question 92–02; Pennsylvania Department of Health and Human Services, Administration for Children, Youth and Families, Policy Announcement No. ACYF–CB–PA–01–01, January 23, 2001.

statute or regulation authorizing an award of interest is not dispositive in this case.